UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-62231-DAMIAN/VALLE

BOBBY MELLARD,[1]

    Petitioner,

v.

RICKY D. DIXON, Secretary, Florida
Department of Corrections,

    Respondent.
_____/

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE

THIS MATTER is before the Court upon Petitioner Bobby Mellard's ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). United States District Judge Melissa Damian has referred the Petition to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636. *See* (ECF No. 32).

After due consideration of the Petition, the Response from the Secretary of the Florida Department of Corrections (the "State") (ECF No. 25), the Reply (ECF No. 39), the parties' Joint Status Report (ECF No. 40), and all pertinent portions of the underlying record, the undersigned recommends that the Petition be **DENIED** without an evidentiary hearing. *See Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting 28 U.S.C. § 2255) (providing that an assertion of ineffective assistance of counsel does not require an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *see also Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (concluding that an

---

[1] The parties refer to Petitioner as Mr. Mellard. *See generally* (ECF Nos. 1, 25). The underlying state court, however, refers to Petitioner as Mr. Mellad. *See generally* (ECF Nos. 26, 27). For consistency, this Report and Recommendation adopts the spelling in the Petition.

evidentiary hearing is not required unless petitioner can demonstrate that factual allegations, if proven, would show entitlement to relief).

## I.     INTRODUCTION

A jury convicted Petitioner of manslaughter. The Indictment and theory of prosecution, however, was that Petitioner committed a preplanned murder. Petitioner's primary argument in the Petition rests on an overriding premise: that it was error for the jury to have been instructed on the lesser-included charge of manslaughter. Although this premise underpins many of Petitioner's legal arguments, the premise is wrong—it was legally correct for trial court to instruct the jury on the lesser-included offense of manslaughter.

In addition, the State has identified numerous additional and alternative reasons why the Petition should be denied, both procedurally and on the merits. Upon review of the record, the undersigned is fully persuaded by the State's arguments and recommends that each reason outlined in the State's Response (including the procedural-based reasons) be accepted and adopted as alternative and independent grounds for denial of the Petition. Nonetheless, in an abundance of caution, this Report and Recommendation will address the merits of the Petition.

## II.    BACKGROUND

### A.    Factual Background

In 2008, police investigated the scene of a homicide in Lauderhill.[2] The victim was shot in a stairwell near the third floor of an apartment building. Two spent bullet casings were found near the body of the victim.

Initially, the murder remained unsolved and no charges were filed. Several months later, however, Petitioner was involved in a robbery in North Lauderdale, in which he fired a gun. The

---

[2] The Court's brief rendition of the undisputed facts is taken from Petitioner's summary of the facts in his appellate brief. *See* (ECF No. 26-1 at 66-80, 248).

police collected a spent bullet casing from the robbery scene and concluded that the casing matched the two casings that had been found at the murder scene. Other than the bullet casings from the murder scene, the police did not recover any additional physical evidence linking Petitioner to the murder, such as DNA or fingerprint evidence.

Ultimately, after further investigation, the police concluded that Petitioner was the murderer. According to the evidence, Petitioner cased the stairwell near the victim's third-floor apartment, waiting alone to kill the victim upon the victim's return home. The purported motive for the shooting was that the victim had defrauded Petitioner of several thousand dollars. Based on this evidence, Petitioner was indicted on one count of first-degree murder. Petitioner proceeded to trial.

**B.     Procedural Background**

After six days of trial, the case went to the jury. (ECF No. 27-1 at 1, 915). The jury initially struggled to reach a unanimous decision, resulting in an *Allen* charge. (ECF No. 26-1 at 84). During their deliberations, the jury forwarded three questions to the court, which the judge addressed after conferring with counsel. (ECF Nos. 26-1 at 84; 27-1 at 1007). Ultimately, the jury reached a verdict and convicted Petitioner of manslaughter. (ECF No. 27-1 at 1012-13). The jury's responses to certain interrogatories on the verdict form, however, raised legal issues for the parties and the trial court. More specifically, on the verdict sheet, the jurors found that Petitioner had possessed the murder weapon, but that he had not discharged it. (ECF No. 26-1 at 86). Consequently, given that the prosecution's theory of the case was that a single gunman, acting alone, had waited upstairs for the victim to arrive, and given that the jury found that Petitioner had not discharged the murder weapon, Petitioner argued that the jury's interrogatories effectively acquitted him of guilt. *Id.* at 203-04.

3

The trial court rejected Petitioner's argument and sentenced Petitioner to 30 years in prison. *Id.* at 130. Petitioner appealed the jury's verdict to the Fourth District Court of Appeal. *Id.* On appeal, the State conceded that the jury's verdict was factually inconsistent (i.e., it was inconsistent to find that Petitioner possessed the murder weapon but had not discharged it). *Id.* at 103. The State argued, however, that factually inconsistent verdicts are permitted under Florida law as a matter of leniency. *See id.* at 104; *see also Eaton v. State*, 438 So. 2d 822, 823 (Fla. 1983). What is not permitted under Florida law, the State argued, are legally inconsistent verdicts. Thus, the State argued that the verdict in Petitioner's case was not legally inconsistent because manslaughter was necessarily a lesser-included offense to the more severe offense of first-degree murder. *See* (ECF No. 26-1 at 101). The Florida appellate court affirmed the jury's verdict. *Id.* at 50.

Following the appellate court's affirmances of the jury verdict, Petitioner filed a post-conviction motion in state court. *Id.* at 2. After Petitioner's post-conviction motion was denied, he filed the instant Petition for federal habeas relief. *See generally* (ECF No. 1). The State concedes that the Petition is timely. (ECF Nos. 25 at 4; 40 at 2).

### III.  LEGAL STANDARDS

#### A.  Federal Habeas Corpus Petitions (28 U.S.C. § 2254)

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") limits the availability of federal post-conviction relief to state prisoners. Specifically, 28 U.S.C. § 2254(d), as amended by the AEDPA, directs that writs of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings," unless the petitioner can establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). This standard is "highly deferential," requiring that "state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

4

Moreover, § 2254(d) requires that the petitioner demonstrate that the state court's application of Supreme Court precedent was "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citation omitted).  An "unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted).  Because "the state court's decision must have been more than incorrect or erroneous," *Wiggins*, 539 U.S. at 520, the Supreme Court has repeatedly described the § 2254(d) standard as "difficult to meet."  *Harrington*, 562 U.S. at 102; *Cullen*, 563 U.S. at 181.  As the Supreme Court has explained, § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington*, 562 U.S. at 102.  The statute "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

  **B.**  **Ineffective Assistance of Counsel (*Strickland v. Washington*)**

The "clearly established Federal law" for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). *See Marshall v. Sec'y, Fla. Dep't Corr*., 828 F.3d 1277, 1284 (11th Cir. 2016).  To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must demonstrate both: (i) that his counsel's performance was deficient; and (ii) actual prejudice resulting from the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Both prongs must be met to succeed on a claim of ineffective assistance.  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).

  As to the first *Strickland* prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth

Amendment." *Strickland*, 466 U.S. at 687. The test to determine whether an attorney's performance was deficient "has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [The test is] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted at trial." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight and must presume that counsel's performance was reasonable and adequate. *Strickland*, 466 U.S. at 689; *see also Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only where it fails to meet "an objective standard of reasonableness," judged according to "prevailing professional norms." *Strickland*, 466 U.S. at 687-88. Indeed, the Eleventh Circuit has adopted a "strong" presumption that counsel's performance was reasonable, noting that "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Putnam v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001) (citations and quotations omitted). Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers*, 13 F.3d at 386.

The second prong of the *Strickland* test requires a petitioner to show that the lawyer's deficient performance resulted in actual prejudice. *Strickland*, 466 U.S. at 687, 693. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Lastly, because "the standards created by *Strickland* and § 2254 are both highly deferential . . . when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations omitted).

In determining whether counsel's performance was deficient, however, the court is not required to "address both components of the [*Strickland*] inquiry if the defendant makes an

6

insufficient showing on one." *Strickland*, 466 U.S. at 697. As the Supreme Court has stated, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id*. Significantly, the task of this Court in considering a § 2254 petition is not to repeat the inquiry of the state habeas court and assess whether counsel's performance met the *Strickland* standard for effective assistance. Rather, the task of this Court is only "to determine whether the state habeas court was objectively reasonable in its *Strickland* inquiry." *Putnam*, 268 F.3d at 1244 n.17. In rare circumstances, a prisoner may be entitled to a presumption of ineffective assistance of counsel without an inquiry into counsel's actual performance. *See United States v. Cronic*, 466 U.S. 648, 658 (1984) ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."). The *Cronic* presumption is reserved for circumstances where a defendant was actually or effectively unrepresented at a critical stage of trial. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (discussing the three circumstances in which *Cronic* may apply: (i) where a defendant has no counsel; (ii) where circumstances prevent counsel from rendering assistance; and (iii) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing").

## IV.    DISCUSSION

The Petition raises seven grounds of alleged ineffective assistance of counsel under *Strickland*. The Court analyzes each ground in turn. Before doing so, however, the Court first addresses, as it must, whether Petitioner exhausted his state court remedies prior to filing the instant Petition.

### A. Petitioner's Exhaustion of State Court Remedies

Before a writ of habeas corpus may be granted to an individual in state custody, the individual must first have exhausted all remedies that are available in state court to challenge his conviction. 28 U.S.C. § 2254(b), (c); *Michel v. Inch*, No. 17-CV-61469, 2019 WL 1904110, at *4 (S.D. Fla. Apr. 9, 2019); *Harris v. Sec'y, Fla. Dep't of Corr.*, 709 F. App'x 667, 668 (11th Cir. 2018). To properly exhaust state remedies, a petitioner must fairly present *every issue* raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 456-59 (11th Cir. 2015); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979).[3]

Here, as stated in the State's Response, many of the arguments in the Petition were not properly raised in state court and are therefore unexhausted.[4] As a result, the Petition should be denied on this procedural basis, as Petitioner has also failed to show cause and prejudice to excuse this failure and is now procedurally barred from raising these claims. *See, e.g.*, *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020). Nonetheless, in an abundance of caution, the Court will address the merits of the Petition.

### B. Ground One – Failure to Object to the Jury's Instruction on Manslaughter

In Ground One, Petitioner argues that trial counsel was constitutionally ineffective because he did not object to the inclusion of a jury instruction on manslaughter, arguing that the weight of the evidence was contrary to the verdict. *See generally* (ECF No. 1-1 at 24-36). This argument is both legally and factually incorrect.

---

[3] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

[4] Specifically, Petitioner has failed to exhaust his state court remedies as to arguments in Ground One (ECF No. 25 at 11-22), Ground Three (*Id.* at 28-29), Ground Four (*Id.* at 34-38), Ground Five (*Id.* at 42-44), Ground Six (*Id.* at 47-48), and Ground Seven (*Id.* at 55).

Petitioner's argument is legally incorrect because the State was legally entitled to a jury instruction on manslaughter as a lesser-included offense of first-degree murder. *E.g., State v. Weller*, 590 So. 2d 923, 926 (Fla. 1991) ("The law requires that an instruction be given for any lesser offense all the elements of which are alleged in the accusatory pleadings and supported by the evidence adduced at trial."); *Rivers v. State*, 75 Fla. 401, 404-05 (Fla. 1918) ("An indictment charging murder in the first degree includes the lower degrees of murder as well as manslaughter."). Counsel cannot be deemed ineffective for failing to raise a meritless objection, such as this. *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).

In addition, Petitioner's argument is factually incorrect because the State had sufficient evidence to support its first-degree murder charge, which therefore made it appropriate to instruct the jury on both murder and manslaughter, as a lesser-included offense. Among the evidence at trial, the State introduced evidence that the gun used to kill the victim in Lauderhill was the same gun that Petitioner possessed (and fired) in the commission of a robbery in North Lauderdale a few months after the murder:

> Q: When you said that Casing M from North Lauderdale is a match to Casing M from the Lauderhill scene, what do you mean by that, that it's a match?
>
> A: Well, as I described in the report, they were fired in my opinion from the same gun.

(ECF No. 27-1 at 647) (testimony by Ms. Consuegra-Rodriguez, an expert witness). The State also introduced testimony from a witness that she saw the .45 caliber gun in Petitioner's vehicle on the night of the murder:

> Q: Did you have a chance to look inside his vehicle that night?
>
> A: Yes, I did.
> Q: And did you see anything of importance inside that vehicle?
>
> A: Yes. He have the gun [sic] in the passenger seat . . . .

9

> Q: The black .45 that you had seen in the past Mr. Mella[r]d have [sic], was that the same gun on the seat that night?
>
> A: Correct, uh-huh.

*Id.* at 580 (testimony of Ms. Dalina Achille, a close friend of Petitioner). Finally, the State introduced evidence that Petitioner confessed to the murder to at least two individuals. One individual testified:

> A: We were talking and he said he was trying to turn his life around and not do anything bad anymore, and he mentioned that the last time he did something bad was in the beginning of the year, and I asked him what that was, and he said he shot a guy in Lauderhill.

*Id.* at 444-45 (testimony of Ms. Charmaine Singh, another close friend of Petitioner). Another witness added:

> [Petitioner] told me he was waiting for his brother upstairs, I guess he was on the top floor waiting for him, for like two or three hours waiting for him, then he see him come upstairs, so I guess he shot him in the head, and then he walked off like nothing happened.

*Id.* at 528 (testimony of Mr. Brad Shurlock, a long-time friend of Petitioner).

Against this factual backdrop, the State had adequate evidence for the charge of first-degree murder to be submitted to the jury. Petitioner's argument that "there was no evidence at trial to support the State's entitlement to a manslaughter jury instruction" is belied by the record. (ECF No. 1-1 at 28, 29). Furthermore, if there was evidence to support the more severe charge of murder, there was certainly sufficient evidence to support a jury instruction on the lesser-included offense of manslaughter. Additionally, Petitioner's argument (ECF No. 1-1 at 26) that the manslaughter instruction was legally improper ignores established case law that manslaughter is a necessary lesser-included offense of first-degree murder. *See, e.g., Rivers,* 75 Fla. at 404-05 ("An indictment charging murder in the first degree includes the lower degrees of murder [and]

10

manslaughter, and the accused may be convicted under such indictment of either degree of murder or manslaughter of which the evidence may show him to be guilty.").[5]

For the foregoing reasons, the undersigned recommends that Petitioner's Ground One be denied.

### C. Ground Two – Failure to Insist that Defendant Testify

Petitioner has withdrawn Ground Two. (ECF No. 1-1 at 36).

### D. Ground Three – Failure to Ensure Presence of a Witness (Connie Looby)

In Ground Three, Petitioner argues that counsel was ineffective for failing to secure the testimony of a witness, Ms. Connie Looby.[6] (ECF No. 1-1 at 36). "Whether to call a witness at trial is the type of strategic decision for which the lawyer's professional judgment is generally not subject to postconviction second-guessing." *Burkhart v. Florida*, No. 17-CV-022, 2018 WL 3040944, at *3 (N.D. Fla. May 16, 2018) (quoting *Ferguson v. State*, 101 So. 3d 895, 897-98 (Fla. 4th DCA 2012)). That aside, Petitioner's argument fails because trial counsel did, in fact, attempt to secure the appearance of Ms. Looby via subpoena. Petitioner's argument, then, is effectively that counsel should have succeeded.

Petitioner's trial commenced on October 19, 2015. (ECF. No. 27-1 at 1). Counsel attempted to serve a subpoena on Ms. Looby to testify at trial beginning on October 3rd. *Id.* at 824. When service was unsuccessful and it appeared that the witness was evading service and had left the country, counsel represented to the Court: "my people have been out there early morning,

---

[5] In Florida, there are two categories of lesser-included offenses: (i) necessary lesser-included offenses; and (ii) permissive lesser-included offenses. *See Daniel v. State*, 137 So. 3d 1181, 1183 (Fla. 3rd DCA 2014). Necessary lesser-included offenses are "those offenses in which the statutory elements of the lesser-included offenses are always subsumed within those of the charged offense." *Walton v. State*, 208 So. 3d 60, 64 (Fla. 2016) (quoting *Sanders v. State*, 944 So. 2d 203, 206 (Fla. 2006)). Manslaughter is such a necessary lesser-included offense of murder.

[6] The State concedes that Ground Three has been properly exhausted. (ECF No. 25 at 28-29).

11

late at night, weekends, six or eight times, she never answers the door." *Id.* at 502.  Nonetheless, Petitioner argues that his trial counsel was deficient for not attempting to serve a subpoena on Ms. Looby earlier.  (ECF No. 1-1 at 36-38).

Given the high standard imposed by *Strickland*, the undersigned is not persuaded that counsel's efforts to secure Ms. Looby's testimony (beginning around two weeks prior to trial) was constitutionally ineffective.[7]  (ECF No. 27-1 at 502, 824).  Even if it were, however, the undersigned is also not persuaded that Ms. Looby's failure to testify prejudiced Petitioner.  Ms. Looby's proffered testimony was that: (i) she believed someone else committed the crime; and (ii) she saw that other person in the apartment complex (but not on the third floor) a couple of hours before the crime.  *Id.* at 815.  Ms. Looby, however, would not have been allowed to testify about her unsupported "beliefs."  Her admissible testimony would have been limited to whatever information she gained through one of her five senses.  *Deamelio v. State*, 341 So. 3d 463, 465 n.6 (Fla. 2nd DCA 2022).  Moreover, the absence of Ms. Looby's testimony that she saw another person "lurking around for hours" (not on the third floor) two hours before the murder, when juxtaposed to the evidence implicating Petitioner, fails to establish that Petitioner was prejudiced by her failure to testify.[8]  (ECF No. 27-1 at 815).  There is no reasonable probability that Ms. Looby's testimony would have changed the outcome of the case.  *Strickland*, 466 U.S. at 694.  Thus, Petitioner has not established that, even if counsel was deficient in not subpoenaing the witness earlier, Petitioner was prejudiced by her absence.

---

[7] Relatedly, the undersigned is also unpersuaded that the Florida court's denial of relief on this point was an unreasonable application of federal law, cognizable in a federal § 2254 petition.

[8] There are numerous other reasons why Ms. Looby's testimony, even as proffered, does not meet the requisite *Strickland* standard for prejudice.  The State's arguments on this point should be accepted and adopted in full.  *See* (ECF No. 25 at 30-33).

12

For the foregoing reasons, the undersigned recommends that the Petitioner's Ground Three be denied.

E.  **Ground Four – Failure to Object to the Court's Response to a Jury Question**

Next, Petitioner argues that his counsel was ineffective for failing to object to "how" the trial court answered one of the questions from the jury. (ECF No. 1-1 at 32-33, 38-44). Question No. 2 read as follows: "If I think [Petitioner] was involved in the murder but I don't believe he is the person who shot the bullets that killed [the victim] can I still find him guilty of 1st degree murder?" (ECF No. 26-1 at 16). In relevant part, the trial judge responded:

> Now, the legal question that you asked me, "If I think [Petitioner] was involved," et cetera, you have to rely on that set of instructions that I gave you, that's what you rely upon in making these decisions. If I give you an answer to that question, in essence I am injecting myself into your deliberative process. Do you follow what I'm saying? I cannot make the decision for you, you have to make the decision. So, you take the instructions and you marry it to the facts. So, if I answer this directly, in essence I am giving sort of a factual answer and I can't do that.

(ECF No. 27-1 at 1009-10).

According to Petitioner, counsel was ineffective for not insisting that the trial judge answer the question by saying "No." (ECF No. 1-1 at 38). This argument is without merit.[9] When a jury has a question during deliberations, "[a] trial court need only [answer] questions of law, not of fact." *Coleman v. State*, 610 So. 2d 1283, 1286 (Fla. 1992); *see Kelley v. State*, 486 So. 2d 578, 583 (Fla. 1986) (affirming trial court's decision not to answer jury's factual question "in light of the [court's] legitimate hesitation to comment upon the evidence"). The jury is the trier of fact and its role is to resolve the facts at issue in a trial. *See Harrell v. State*, 245 So. 2d 302, 302

---

[9] Relatedly, the Florida court's decision to deny Petitioner relief on this point was not an unreasonable application of federal law. Indeed, Petitioner's argument on this issue relies once more on the faulty premise underscoring Ground One—that it was error for the jury to have been instructed on the manslaughter charge in the first place. As discussed previously, Petitioner's premise is legally incorrect. *See* Section IV(B), *supra*.

13

(Fla. 1st DCA 1971). Here, the jury's question went directly to a factual finding on a critical matter—who shot the bullets that killed the victim? The trial judge was correct to observe that, if he attempted to directly answer the question, he would have been inserting himself into the jury's resolution of the facts. Under these circumstances, counsel was not constitutionally ineffective for failing to make a meritless demand that the trial court respond to the jury's question as Petitioner wishes. Counsel cannot be deemed ineffective for failing to raise a meritless objection, such as this. *Freeman*, 536 F.3d at 1233. Moreover, Petitioner's argument that the challenged jury instruction amounted to a "constructive amendment" of the Indictment, *see* (ECF No. 1-1 at 39-41), permitting the jury to convict Petitioner under a Principal Theory not contained in the Indictment is similarly without merit.[10] As discussed previously, because manslaughter is a necessary lesser-included offense of murder, instructing the jury on manslaughter did not improperly "broaden the range of possibilities for convicting" (ECF No. 1-1 at 40) him of an offense not contained in the Indictment. *See* Section IV(B), *supra*. Rather, the instruction complied with the law as the elements of manslaughter are subsumed within first degree murder, and the jury has the inherent power to return a verdict of guilty on a lesser included offense. *See Walton*, 208 So. 3d at 64.

      For the foregoing reasons, the undersigned recommends that Petitioner's Ground Four be denied.

---

[10] Moreover, most of Petitioner's arguments raised in Ground Four have not been exhausted and can be denied on that basis as well. *See* (ECF No. 25 at 34). This includes Petitioner's arguments that counsel was ineffective for not objecting to the manslaughter jury instruction as a "constructive amendment" of the Indictment. (ECF No. 1-1 at 39).

**F.     Ground Five – Failure to Introduce Exculpatory Evidence (Cell Phone Records)**

In Ground Five, Petitioner argues that counsel was ineffective for not introducing as evidence at trial Petitioner's cell phone site records, which purportedly established that Petitioner was "some 20 miles away from the crime scene, before, during, and after [the] murder," and that the trial court erred in not holding an evidentiary hearing on this issue. (ECF No. 1-1 at 44-45). In response, the State argues that no such evidence existed because the cell phone records were destroyed in 2008 (long before Petitioner's trial in 2015), and that, in any event, Petitioner was not entitled to an evidentiary hearing. (ECF No. 25 at 45-46). Lastly, the State points out that Petitioner cannot establish that he is entitled to federal habeas relief based on the state court's denial of an evidentiary hearing. *Id.* at 45.

The undersigned finds that Petitioner's argument based on the failure to hold an evidentiary hearing on his post-conviction motion is not cognizable in a federal petition for habeas corpus as a matter of law:

> [W]e have stated it is "beyond debate" that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief.

*Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009).[11]  Petitioner's Reply does not address any of the cases (including *Carroll*) cited by the State to support the State's position that Petitioner's argument is not a cognizable basis for federal habeas relief. *See* (ECF No. 39). Thus, the undersigned recommends that Petitioner's Ground Five be denied.

---

[11] Furthermore, because Petitioner never challenged the trial court's failure to hold an evidentiary hearing in state court, the claim is unexhausted and procedurally barred. *See* (ECF No. 25 at 42-43).

15

### G.     Ground Six – Failure to Introduce Exculpatory Testimony (Shanika Bailey)

In Ground Six, Petitioner again argues that the state court erred in not holding an evidentiary hearing pertaining to the absence of a purported alibi witness, Shanika Bailey. (ECF No. 1-1 at 45-47). According to Petitioner, Ms. Bailey would testify that she and Petitioner were on the phone "during and after the shooting," and that she did not hear any gunshots while on the phone with Petitioner. *Id.* at 45.

The undersigned recommends that Ground Six be denied for the same reasons as discussed in Ground Five. First, this claim fails because the state court's failure to conduct an evidentiary hearing is not a cognizable basis for federal habeas review. *Id.* at 48; *see Carroll*, 574 F.3d at 1365. Second, this claim remains unexhausted and procedurally barred because Petitioner did not raise the failure to hold an evidentiary hearing in state trial court. (ECF No. 25 at 47-48). Lastly, in light of State's evidence refuting the proffered testimony, Petitioner cannot establish that he was prejudiced by counsel's purported failure to investigate and call this witness. *Id.* at 52.

For the foregoing reasons, the undersigned recommends that Petitioner's Ground Six be denied.

### H.     Ground Seven – Cumulative Error

In Ground Seven, Petitioner argues that the cumulative errors of his trial counsel rendered counsel constitutionally ineffective.[12] (ECF No. 1-1 at 47-48). The Supreme Court has stated: "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659 n.26. Here, Petitioner has failed to establish any individual claim of ineffectiveness, and he has not shown how any specific error of his counsel undermined the

---

[12] The State acknowledges that Ground Seven has been properly exhausted. (ECF No. 25 at 55).

16

reliability of the finding of guilt. *See, e.g.*, *U.S. v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) ("Where there is no error or only a single error, there can be no cumulative error."). For this reason, the undersigned recommends that Ground Seven be denied.

> I.  **Request for a Hearing on Petition**

Lastly, Petitioner requests that the Court hold an evidentiary hearing so he can develop the factual bases of the disputed claims. (ECF No. 1-1 at 48). Having reviewed the Petition, Response, Reply, and the record in this case, however, the undersigned finds that an evidentiary hearing is unnecessary. *See Gordon*, 518 F.3d at 1301 (quoting 28 U.S.C. § 2255) (providing that an assertion of ineffective assistance of counsel does not require an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *see also Atwater*, 451 F.3d at 812 (concluding that an evidentiary hearing is not required unless petitioner can demonstrate that factual allegations, if proven, would show entitlement to relief).

> V.  **CERTIFICATE OF APPEALABILITY**

A petitioner seeking to appeal a District Court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal. Rather, a petitioner must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 194 (2009). A COA should be issued only when a petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a District Court has rejected a petitioner's constitutional claims on the merits, the petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Michel*, 2019 WL 1904110, at *10 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). However, when the District Court rejects the claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

17

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (citing *Slack*, 529 U.S. at 484). Under either ground, the undersigned recommends that the District Court deny a COA.

## VI.   FINAL RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that: (i) the Petition (ECF No. 1) be **DENIED**; and (ii) a Certificate of Appealability be **DENIED**.

**Within 14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. *See* Mag. J. R. 4(b) (any party may object to a Magistrate Judge's recommendation regarding dispositive motions within 14-days or within such other time as may be allowed by the Court). Further, **within seven days**, any party may respond to a parties' objections. *Id.* Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2024); *see Thomas v. Arn*, 474 U.S. 140 (1985).

Lastly, if the parties do not intend to file objections, they shall file a Notice of Non-Objection **within 7 days** of this R&R.

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on August 5, 2025.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Melissa Damian
   All Counsel and Parties of Record